UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY, | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | No.: | 3:05-CV-447 (VARLAN/GUYTON) |
| DALE K. MARTIN, | ) ) | | |
| Defendant. | ) | | |

# MEMORANDUM OPINION

This civil action is before the Court on the Motion of Plaintiff for Summary Judgment [Doc. 7]. Plaintiff Developers Surety and Indemnity Company ("Developers") contends that it is entitled to judgment as a matter of law based on the terms of a contractual indemnity agreement. Plaintiff has filed a memorandum [Doc. 8] and the affidavit of Sean C. Wozney [Doc. 9] with exhibits in support of the motion for summary judgment. Defendant Dale C. Martin has filed a response [Doc. 18], an affidavit with exhibits [Doc. 19], a memorandum of facts [Doc. 20], and a memorandum of law [Doc. 21] in opposition to the pending motion. Plaintiff has filed a reply brief in support of summary judgment [Doc. 24], along with the affidavit of Conrad Wozney [Doc. 25-2], the supplemental affidavit of Sean C. Wozney [Doc. 25-3] with exhibits, and the affidavit of Jonas Smelcer [Doc. 28]. The defendant requested and was granted leave to file a supplemental brief in opposition to the motion for summary judgment but he has not done so. Accordingly, the motion is ripe for determination.

The Court has carefully reviewed the pending motion and related pleadings in light of the entire record and controlling law. For the reasons set forth herein, the plaintiff's motion for summary judgment will be **GRANTED**.

**I.   Facts**

This case was filed September 28, 2005, by plaintiff Developers against Dale K. Martin on the basis of diversity jurisdiction. Developers asserts a claim of breach of contract based on an indemnity agreement executed by defendant Martin, individually, Daniel Stetson, individually, and Stetson & Associates, Inc. and Deer Path Vacations, L.P., as principals. A copy of the indemnity agreement is attached to the complaint [Doc. 1] as Exhibit A.

The indemnity agreement was executed on October 8, 2001. The indemnity agreement contains the following pertinent provisions:

> 1.   INDEMNIFICATION. In consideration of the execution and delivery by Surety [Developers] of a bond or any Bonds on behalf of Principal [Deer Path Vacations], Principal and Indemnitor [Martin] shall pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of Principal and shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal, whether or not Surety shall have paid any amount on account thereof, including, without limitation, the following:
> 1.1   To pay to Surety an initial premium upon the execution of each Bond, computed in accordance with the rates then charged at the time such

2

Bond is executed. To also pay all renewals, extensions and premium adjustments billed by Surety until satisfactory evidence of discharge of release shall be furnished to Surety. For Premium computed on the basis of contract price, regardless of amount of such bond, to pay Surety an additional premium or be entitled to receive from Surety, as the case may be, computed on the difference in contract price occurring in the progress or at completion of the project or operation for which the Bond is issued.

1.2  Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's nonperformance of an Obligation or any other matter covered by a Bond.

1.3  Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.

1.4  Liability incurred or expenses paid in procuring or attempting to procure a release of liability under or exoneration of a Bond.

1.5  Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation or a Bond.

1.6  Liability incurred or demands, claims, damages or expenses caused by the failure of Principal or Indemnitor to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and expenses of Surety in connection with the enforcement of any of Principal's or Indemnitor's covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereunder.

1.7  The obligations of Principal and Indemnitor hereunder shall also include, at Surety's election, exercisable by Surety by the delivery of written notice to Principal and/or Indemnitor, the obligation to defend at Principal's and/or Indemnitor's sole cost and expense, and with counsel acceptable to Surety, any suit, action or other proceeding initiated with respect to an Obligation or a Bond.

2.  EXERCISE OF RIGHTS BY SURETY. In connection with the exercise of any of Surety's rights under this Agreement:

2.1  Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.

> 2.2 Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services.
>
> * * *
>
> 2.5 Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit.

An addendum to the agreement, signed by Martin as a personal indemnitor, further provides:

> IN CONSIDERATION of the execution of such bond, and in compliance with a promise of the undersigned made prior thereto, the undersigned hereby agree, for themselves, their personal representatives, successors and assigns, jointly and severally, as follows:
>
> 1. To reimburse Surety, upon demand for all payments made for and to indemnify and keep indemnified Surety from:
> (a) all demands, loss, contingent loss, liability and contingent liability claim, expense, including attorney's fees, for which Surety shall become liable or shall become contingently liable by reason of such suretyship, whether or not Surety shall have paid same at the time of demand; and
> (b) to pay Surety an advance premium, that is fully earned, and to pay annually thereafter such annual premium for suretyship as is billed until satisfactory evidence of discharge or release of liability shall be furnished to Surety by the obligee.

Developers relies on two affidavits of Sean C. Wozney [Docs. 9, 25-3], the Recovery Manager for Developers, the affidavit of Conrad Wozney [Doc. 25-2], a Senior Claims Analyst for Developers, and the affidavit of Jonas Smelcer [Doc. 28], the Superintendent of Roads for Sevier County, Tennessee. In reliance on the indemnity agreement, Developers issued certain performance bonds as surety, including, but not limited to, Bond Nos. 526106S and 527781S, naming Stetson and Associates, Inc. d/b/a Deer Path Vacations, LP as principal

4

and for the benefit of Sevier County in connection with the development of the Eagle Springs Resorts, Phase II and Lone Branch Creek Road Projects.

In or around January 31, 2003, Sevier County, Tennessee, the obligee on Bond No. 526106S ("the Eagle Springs Resort Bond"), put Developers on notice of a potential claim alleging that Deer Path Vacations, L.P. had failed to properly complete the construction and installation of all streets, roads, sidewalks, curbs, and all other improvements in the subdivision known as Eagle Springs Resort, Phase II. By letter dated January 31, 2003, Developers generally advised Martin of the potential Eagle Springs claim, and requested that he provide information regarding the status of completion. It further came to Developers' attention that the Eagle Springs claim allegedly arose from Deer Path Vacations' installation of various utility lines into the subdivision. Sevier County alleged that the installation was not completed in that the installation was not properly covered and the surface, including certain County roads, were not remediated in accordance with applicable regulations incorporated into the bonds. Mr. Smelcer states that it is understood that these bonds cover not only the new construction, but also all related damages to existing roads caused by this new construction. Sevier County advised Developers of its opinion that the work was within the scope of the bonds. By letter dated February 26, 2002, Martin advised Sevier County that Deer Path Vacations would complete the installation of said utilities by properly covering the work and patching the roads under which the work was installed.

Despite Martin's assurances on behalf of Deer Path Vacations, the work was not completed and the Eagle Springs claim was made against Developers in the amount of

$94,000. At the time of the Eagle Springs claim, Deer Path Vacations was involved in proceedings under Chapter 7 of Title 11 of the United States Bankruptcy Code. Neither Deer Path Vacations nor Martin ever took steps to defend or exonerate Developers from the Eagle Springs claim, nor did Martin ever attempt to assist Developers in the investigation or evaluation of the claim in response to the January 31, 2003 request or otherwise.

On two occasions, April 8, 2003, and October 22, 2003, Conrad Wozney personally viewed the work alleged by Sevier County to be incomplete and met with the County Roads Superintendent and other Sevier County agents to discuss the claims. After viewing the work, meeting with Sevier County agents, and reviewing the language of the bonds, Mr. Wozney concluded that it was probable that the complained of work was incomplete because the laying of the utility lines was clearly a part of the improvements in the respective subdivisions, even inasmuch as those lines were connected to existing lines outside of the physical bounds of said subdivisions, and that inherent in the completion of said underground installation was the proper covering over and remediation of the ground, including the remediation of Sevier Count roads under which the work was installed.

After investigation of the Eagle Springs claim, Developers determined that Deer Path Vacations probably did fail to properly complete the installation of the utilities and other improvements covered by the Eagle Springs bond and determined that it was most expedient to compromise the claim rather than assume the risks and costs associated with litigation, especially in light of Deer Path Vacations's and Martin's failure to defend and exonerate

6

Developers and further considering Deer Path Vacations's apparent insolvency. The claim was compromised by payment to Sevier County of $60,000.

Additionally, in or around early 2003, Sevier County made a claim against Developers under Bond No. 527781S ("the Lone Branch Bond"). The basis of the Lone Branch claim was similar to that of the Eagle Springs claim, that is, the failure to properly complete the installation of the utility lines into and for the corresponding subdivision and other improvements. Again, at the time the Lone Branch claim was made against Developers, Deer Path Vacations was in bankruptcy and neither Deer Path Vacations nor Martin undertook to exonerate or defend Developers from the claim. After investigation of the Lone Branch claim, Developers determined that Deer Path Vacations probably did fail to properly complete the installation of the utilities and other improvements covered by the Lone Branch bond and determined that it was most expedient to compromise the claim rather than assume the risks and costs associated with litigation, and compromised the claim by payment to Sevier County of $24,795.

Developers claims it is owed the following amounts from Martin with respect to the Eagle Springs Resort Bond: $2,276 for unpaid premium due October 28, 2003; $2,276 for unpaid premium due October 28, 2004; and $2,276 for unpaid premium due October 28, 2005. Developers also claims it is owed $2,800 for unpaid premium due October 28, 2004, with respect to the Lone Branch Bond.

On or about August 23, 2004, pursuant to the terms of the Eagle Springs Resort Bond, Developers was required to make payment of a claim by Sevier County in the amount of

$60,000. On or about June 23, 2003, pursuant to the terms of the Lone Branch Bond, Developers was required to make payment of a claim by Sevier County in the amount of $24,795. Developers claims it has incurred and paid attorneys fees and related expenses of counsel in the total aggregate amount of $10,339.92 through October 31, 2005.

Pursuant to the terms and conditions of the indemnity agreement, Developers called upon Martin to indemnify it for all losses sustained under the bonds by correspondence dated December 2, 2004, February 12, 2004, March 16, 2004, and June 14, 2005. To date, Martin has failed to indemnify Developers in full or in part for unpaid premiums and losses sustained by Developers with respect to the bonds. To date, Developers has not received reimbursement from any other party with respect to the losses it has incurred under the bonds.

Defendant Martin has submitted an affidavit [Doc. 19] in which he states that the work built for Sevier County on Indian Gap Road, a claim for $83,724.58, is not part of the subdivision of Eagle Springs Resort, Phase II. The work is not inside the subdivision. The billing information states that this is for negligence in causing some damage to roads outside of the subdivision for which the performance bond was issued. Martin states that this was not contemplated by the parties in issuance of the bonds and/or the indemnity agreement.

Martin also states that the work done on Leatherwood, Developers's payment of $24,795, is not part of the Lone Branch Creek Road subdivision. The work done on Leatherwood is outside the subdivision. Martin states that any funds claimed for that work are outside both the performance bond which was issued and the indemnity agreement.

8

Finally, Martin claims that he never received any notification from Developers prior to their payment on the bond that a claim had been filed or was pending. Martin suggests that if he had received notification, he could have explained to the Developers why it should not pay on the bond since the work was not within the covered area.

**II.     Legal Analysis**

   A.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

  B. <u>Compromised Claims</u>

Developers argues that it is entitled to summary judgment on the basis that it issued the Bonds in consideration of and reliance upon defendant's execution of the indemnity agreement in his personal capacity. Developers contends that it has suffered loss pursuant to the Bonds. Developers contends that Martin executed the indemnity agreement and therefore undertook the obligations therein, including indemnifying Developers for unpaid premiums and other loss.

Martin argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether any money should have been paid under the bond. Martin agrees that the indemnity agreement is enforceable according to its terms. However, Martin contends that the amounts paid were for work done outside of the projects "for damage caused by negligence of the contractor on a road outside the project," rather than his company's failure to perform. Martin further argues that plaintiff cannot show that payment on the bonds was made in good faith or based on a reasonable investigation as required by

10

the case law. Martin suggests that Developers should have notified him of the claim and given him an opportunity to show that the claim was outside the scope of bond.

Developers replies that it does not have to prove that the disputed claims were valid. Instead, a surety does not have to establish that it was legally liable for a claim to be entitled to contractual indemnity. The indemnity agreement, Developers notes, provided Developers with the unilateral right to pay, compromise, and/or settle the disputed claims. Developers argues that Martin cannot show bad faith by relying on Sevier County's characterization of the work as "negligence." Relying on the affidavits submitted, Developers contends that it acted in good faith by adequately investigating the disputed claims. Developers also contends that Martin agreed to hold Developers harmless from the costs and attorneys fees incurred in connection with "any and all claim," even if those claims were not valid. With respect to Martin's claim of lack of notice, Developers argues that Martin had both actual and constructive knowledge of the disputed claims. Moreover, pursuant to the indemnity agreement, Martin waived any right to notice of claims.

It is well settled that a party to a contract is presumed to know its contents and is bound by its terms. *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950); *Stooksbury v. American Nat'l Property & Cas. Co.*, 126 S.W.3d 505, 518 (Tenn. Ct. App. 2003). Further, absent any ambiguity, a contract will be interpreted according to its plain language. *Campora v. Ford*, 124 S.W.3d 624, 629 (Tenn. Ct. App. 2003). Martin does not allege that the indemnity agreement is ambiguous. Indeed, Martin admits that it is

11

enforceable as to its terms. It appears that the only dispute is whether the claims paid are within the scope of the agreement.[1]

Martin argues that the claims paid (the $60,000 on the Eagle Springs claim and the $24,795 on the Lone Branch claim) were outside the scope of the bonds because the work was performed on roads outside, rather than within, the respective subdivisions. However, this argument is contrary to the plain language of the indemnity agreement. As set forth above, paragraph 2.1 grants Developers the right "in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed." Thus, Martin granted Developers the right to do exactly what it did, that is, to determine whether the Eagle Springs and Lone Branch claims should be paid or compromised.

This district court has previously held that such provisions are valid, enforceable, and not contrary to public policy in Tennessee. *Safeco Ins. Co. of Am. v. Criterion Investment Corp.*, 732 F. Supp. 834, 841 (E.D. Tenn. 1989); *see Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968) ("Provisions in indemnity agreements granting to the indemnitor the right to compromise and settle claims ... have been upheld as not against public policy and enforced by the courts."). The standard for determining whether a surety may recover such payment is whether the surety acted without a "bad motive." *Safeco Ins.*

---

[1] Martin has presented no opposition to Developers's claims for unpaid premiums. The Court will treat the lack of opposition as an admission that such amounts are due and owing.

12

*Co. of Am.*, 732 F. Supp. at 841. While Martin claims that Developers cannot show that it acted in good faith or that it conducted a reasonable investigation, Martin has presented no evidence to support such an argument. The only evidence in the record reveals that Developers promptly notified Martin of the Eagle Springs and Lone Branch claims. Martin never provided information regarding the claims or otherwise acted to defend the claims. Moreover, Deer Path Vacations was in bankruptcy at the time. Developers was therefore left to conduct its own investigation of the claims, which it did, and make a determination of whether the claims should be compromised. There is no evidence that this determination was made in bad faith or without a reasonable investigation. Indeed, the evidence is to the contrary.

Finally, with respect to Martin's argument that he did not receive notice of the claims, paragraph 10 of the indemnity agreement provides that failure of the surety (Developers) to give notice of a claim "shall in no way relieve Principal and Indemnitors, or any of them, of any liability, duty or obligation hereunder." Further, under paragraph 14.4 of the Indemnity Agreement, Martin "waive[d] notice of any default." Thus, even assuming Martin's evidence to be true for the purposes of this motion, he waived any right to receive notice of the claims.

Accordingly, the Court finds that Developers is entitled to judgment for the amounts of unpaid premium and the compromise of the Eagle Springs and Lone Branch claims as follows: $2,276 for unpaid premiums due October 28, 2003; $2,276 for unpaid premium due October 28, 2004; $2,276 for unpaid premium due October 28, 2005; $2,800 for unpaid premium due October 28, 2004. The Court further finds that Developers is entitled to

judgment for the amounts of loss in compromised claims as follows: $60,000 for the Eagle Springs claim and $24,795 for the Lone Branch claim. Thus, Developers is entitled to a total judgment of $94,423.

   C.   Attorneys' Fees

Developers also seeks an award of attorneys' fees and expenses incurred, presumably in the efforts to investigate and compromise the Eagle Springs and Lone Branch claims. Paragraph 1.3 of the indemnity agreement provides that Martin agrees to indemnify Developers for expenses paid in connection with claims "including, without limitation, attorneys' fees and all legal expenses." While some cases may require the surety to show that it was reasonably necessary to incur such expenses, *see e.g., Central Towers Apartments, Inc. v. Martin*, 453 S.W.2d 789, 799-800 (Tenn. Ct. App. 1969), the Court finds that there is no question that Developers had to incur such expenses in the present case. As discussed above, Developers had no assistance from either Martin or Deer Path Vacations in responding to or defending the claims. The amounts requested are not unreasonable and have been incurred in connection with Developers's rights under the indemnity agreement. Accordingly, the Court finds that Developers is entitled to recover attorneys' fees in the amount of $10,339.92.

   D.   Prejudgment Interest

Finally, Developers seeks an award of prejudgment interest of 11%. Paragraph 1 of the indemnity agreement provides that Martin is liable for any loss, attorneys' fees and expenses "together with interest thereon at the maximum rate allowed by law." This Court

14

has the discretion to award prejudgment interest according to Tennessee law. *Hunter v. Ura*, 163 S.W.3d 686, 706 (Tenn. 2005). Prejudgment interest is intended "to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Id.* (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). This Court must consider whether the amount of the obligation was certain or ascertainable and whether the existence of the obligation was disputed on reasonable grounds. *Id.*

In the present case, the amounts sought by Developers were certain and ascertainable. While Martin has argued in opposition to the motion for summary judgment that the claims should not have been paid, there is nothing in the record to indicate that such arguments were made prior to or during the investigation of the claims. Based on the record as a whole, the Court finds that an award of prejudgment interest is appropriate.

Tenn. Code Ann. § 47-14-103 provides that the maximum effective rate of interest on a contract signed by the party to be charged is equal to the formula rate, which is calculated as prescribed in Tenn. Code Ann. § 47-14-105. As of the date of the filing of plaintiff's motion for summary judgment, December 8, 2005, the formula rate published by the Tennessee Department of Financial Institutions, was 11%. Accordingly, the Court will grant Developers an award of prejudgment interest of 11% up to the date of the entry of judgment.

15

## III. Conclusion

For the reasons set forth above, the plaintiff's motion for summary judgment [Doc. 7] is hereby **GRANTED**. The Clerk is directed to enter judgment in favor of the plaintiff, Developers Surety and Indemnity Company, and against the defendant, Dale K. Martin, as follows: $94,423 for past due premiums and losses incurred; $10,339.92 for attorneys' fees and expenses; and award of prejudgment interest at the rate of 11% up to the entry of judgment.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE
